## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No.: 8:23-cr-00360-TPB-AAS**

**LESLIE BRYANT.**
_____ /

## SENTENCNG MEMORANDUM

COMES NOW, the Defendant, Leslie Bryant, by and through her undersigned attorney, and hereby files this Sentencing Memorandum, in which she asks this Honorable Court to impose a non-incarcerative sentence of five years of probation which is "sufficient, but not greater than necessary" to achieve the purposes of sentencing, pursuant to 18 U.S.C. § 3553(a). As grounds in support hereof, Ms. Bryant states:

Ms. Bryant is currently facing a guideline based on the loss amount attributable to the entire conspiracy, as well as two additional levels for committing the offense while employed at Lowe's. Because of the unique loss based amount in the guideline here, she faces the same guideline or

higher, then the people who organized and ran the conspiracy, and took nearly all of the profits.

Ms. Bryant would process credit care applications that were fraudulent. The individuals applying would key in their social security numbers and other information. Then the credit card company would issue store credit. She would provide the information to the individuals that applied. Those individuals would then leave the register and call the credit card company and ask for credit increases. Despite using false social security numbers and/or names, these credit increases were often granted. However, Ms. Bryant was uninvolved with that process. The individuals would then, presumably, turn over the credit to the individuals that recruited them who would then use the fake credit in various ways.

In this case Ms. Bryant was responsible for processing fraudulent credit cards in the amount of $172,748 over the course of the conspiracy. For her participation she received the following spoils: to purchase a patio set and a Ring doorbell, chime and spotlight camera for $600.00. The retail amount of the items was about $1,200.00, a net of $600.00. The total amount

that the men who executed the main parts of the conspiracy was $1,223,580.54. Ms. Bryant's part in the applications is about 14% of the totals she is being held responsible for in the guideline. And the amount she profited from the conspiracy – that amount is 0.049% of the total proceeds gained illegally. Yet she faces the exact same guideline as everyone else in the conspiracy.

The economic crimes Guideline, Section 2B1.1 of the United States Sentencing Manual routinely recommends arbitrary, disproportionate, and often draconian sentences to first-time offenders of economic crimes. USSG § 1B1.3(a)(1)(A) holds Ms. Bryant accountable for all the acts she caused or abetted, while USSG § 1B1.3(a)(1)(B) holds her accountable for all acts and omissions of others that were in "furtherance of the jointly undertaken criminal activity" and "were reasonably foreseeable" to her.

The real question is the relationship to the loss figure to the issues raised by 18 U.S.C. § 3553(a). According to the original drafters, loss under the Guidelines was effectively a proxy for evaluating culpability. Sometimes it is appropriate, and sometimes it is not. See *United States v. Costello*, 16

F.Supp.2d 36 (D.Mass.1998). For example, at one point, the background note to USSG § 2B1.1 suggested that the Guideline drafters believed loss was an appropriate proxy because it reflected both "harm to the victim" and "gain to the defendant." However, like in the *Costello* case, Ms. Bryant made a very small profit in the scope of the conspiracy. See *Costello*, 16 F.Supp.2d at 38–39 (departure for a defendant whose "cut" of the scheme was less than 1% of the value of the goods stolen).

The Third Circuit noted that loss can, for a peripheral defendant in a conspiracy "overstate both the degree of [defendant's] criminality and his need to be corrected." *United States v. Stuart*, 22 F.3d 76, 82 (3d Cir.1994); see also *U.S. v. Emmenegger*, 329 F.Supp.2d 416, 427 (S.D.N.Y.2004). Accordingly, an offender who saw a nominal amount of profit will be sentenced just as harshly under the loss table as the mastermind who received the greatest share of the profits. This calculation abjectly fails to fairly account for relative culpability among offenders and results in disproportionately high sentences for more marginal co-conspirators, like Ms. Bryant.

As discussed above the economic loss Guideline has lost respect among jurists because of its unjustified harshness. Based on its arbitrariness and the disproportionately severe sentences the guideline often recommends, courts routinely conclude that these Guidelines do not serve as a reliable proxy for culpability and issue sentences below the Guideline range.

In fact, the Interactive Data Analyzer shows that judges are more likely to vary below the Guideline range in Section 2B1.1 cases than the average federal criminal case. Specifically, as shown in Figure 1, federal judges on average tend to grant downward variances to first-time (Category I) offenders in 33.8% percent of all federal criminal cases. In contrast, as shown in the last row of Figure 2, in sentencing first-time offenders under Section 2B1.1, federal judges, on average, grant downward variances about 10 percent more frequently, in about 43 percent of cases.

**Figure 1.**



**Figure 2.**

The punishment should fit the crime. That maxim is handed down

from parents to kids all over this country. The principle of fairness.

"[T]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (internal quotation marks omitted). William Blackstone wrote that it is "absurd" to apply the same punishment to "crimes of different malignity." 4 William Blackstone, Commentaries on the Laws of England 17 (1769). In the leading nineteenth-century treatise, Joel Prentiss Bishop wrote that punishment requires concurrence between *mens rea* and the wrong inflicted because "the evil intended is the measure of a man's desert of punishment." 1 Joel Prentiss Bishop, Commentaries on the Criminal Law § 334 (7th ed. 1882). Justice Robert Jackson wrote in *Morissette v. United States* that the relation between *mens rea* and punishment is "almost as instinctive as the child's familiar exculpatory 'But I didn't mean to.' " 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

*United States v. Collazo*, 984 F.3d 1308, 1338 (9th Cir. 2021).

This Court has the inherent power within sentencing to craft a sentence that considers every factor. And here, Ms. Bryant should be punished for the crime she agreed to commit, and the crime he thought she did commit – and not more than that. Ms. Bryant understands the seriousness of her conduct and is remorseful for having committed this offense. Ms. Bryant accepts that he must be punished; however, she believes that her life and circumstances, as well as the nature of the offense, are factors this Court should consider in fashioning an adequate and just punishment. Ms. Bryant's lack of criminal

history and her cooperation with law enforcement warrants a just and reasonable sentence below the recommended guideline range, as well as her actual conduct.

WHEREFORE, Ms. Bryant prays this Court will grant the relief requested herein.

Respectfully submitted,

A. FITZGERALD HALL
FEDERAL DEFENDER

/s Nicole Hardin
Nicole Hardin, Esq.
Assistant Federal Defender
Bar#: 0026194
400 North Tampa Street, Suite 2700
Tampa, FL. 33602
Tel.:  (813) 228-2715
Fax:  (813) 228-2562
Email: Nicole_Hardin@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of January, 2024, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Jennifer Peresie, AUSA